THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ROBERT WEINER, Appellant.

Crimes — murder in first degree — confessions — trial — question whether there is any evidence of existence of voluntary confession one of law — involuntary confessions — where no other evidence connects defendant with theory of crime on which case went to jury judgment of conviction reversed.

1. Where upon a criminal trial the evidence cannot bear the inference that the defendant's confessions might have been voluntary, the question of their nature should not be submitted to the jury.   The question whether there is any evidence of the existence of a voluntary confession is one of law which, in the first instance, must be decided by the trial judge.

2. Where, therefore, upon examination of the record of a trial for murder in the first degree, the evidence precludes the possibility of the existence of any moving cause for defendant's confessions except beatings which he had received and others with which he was threatened, and except for his confessions no evidence connects him with the

theory of the crime upon which the case was sent to the jury, a judgment of conviction must be reversed.

*People* v. *Weiner,* N. Y. Gen. Sess. March 25, 1927, reversed.

(Argued April 2, 1928; decided May 1, 1928.)

APPEAL from a judgment of the Court of General Sessions of the Peace in the County of New York rendered March 25, 1927, upon a verdict convicting the defendant of the crime of murder in the first degree.

*Robert H. Elder, Charles Rothaus* and *David H. Slade* for appellant. The jury must have rejected the so-called confessions that were taken by the police, all of them, on the ground that defendant was brutally beaten, and in the belief that they were forced from him, and for the additional reason that these statements were mostly inherently unbelievable. (*People* v. *Perretti,* 244 N. Y. 527; *People* v. *Heslin,* 245 N. Y. 87.) Outside of the so-called " confessions " there was no evidence which, taken alone, justified, or which will sustain, the verdict of guilty. (*People* v. *Ledwon,* 153 N. Y. 10.)

*Joab H. Banton, District Attorney* (*Robert C. Taylor* of counsel), for respondent. The voluntariness of a confession involves a question of fact as to which the verdict must be accepted. (*People* v. *Doran,* 246 N. Y. 409.) The evidence justified the verdict. (*People* v. *Flanigan,* 174 N. Y. 306; *People* v. *Cohen,* 223 N. Y. 406.)

O'BRIEN, J. On November 3, 1926, three prisoners attempted to escape from the city prison in New York where they were confined awaiting trial under indictments for felonies. During their attempt to break jail and shoot their way to freedom they killed the warden and one of the keepers. Their desperate venture was unsuccessful and, when their efforts were thwarted, all three committed suicide. As they were confined under indictments for felonies, their attempt to escape constitutes a felony and, since they were engaged in the

commission of such a crime, the killing of the warden and keeper constitutes murder in the first degree. Any one aiding and abetting in the commission of that crime is likewise guilty of murder in the first degree. Defendant has been convicted as one who so aided and abetted.

Weiner, the defendant, had been an associate of Amberg, one of the three prisoners, before Amberg's arrest and incarceration. Weiner himself had been convicted of larceny and was a professional gambler and a bootlegger. After Amberg's arrest, he visited him eight times at the city prison and the evidence indicates the existence of reasons justifying the strongest suspicion that he participated in some way in the prisoners' attempt to escape and was prepared to supply further aid. On the morning of the day upon which the escape was attempted Weiner spent some time with Amberg in the prison. The previous day he had borrowed a chauffeur's license and forged the name of the licensee by erasing the true name and substituting another. After his conference with Amberg, under a false name he rented a car from a garage which he had never previously patronized, spent several hours with Amberg's brother, received twenty dollars from him and was present at the prison door with this car at the hour when the escape was attempted. When the sound of shots issued from the prison to the street where he was waiting, he drove away. Within a few hours he was apprehended and interrogated by the police. He made confessions, which unless made under the influence of fear produced by threats (Code Crim. Pro. section 395), would be competent evidence against him. These confessions embrace statements, later repudiated by him as false, to the effect that he had procured the pistols with which the murders had been committed and that, more than a week before, he had thrown them over the prison wall. The judge in his charge submitted as a question of fact the issue whether the confession had been voluntarily made and instructed that if the jury con-

cluded that it had been made under the influence of fear produced by threats they must entirely reject it. After he had finished his main charge, he instructed the jury at the request of defendant's counsel: "If Weiner did not aid and abet *in supplying pistols* for use in the attempt to escape, that under the evidence in this case he must be acquitted." That is the law of the case, the theory upon which it went to the jury and presumptively, therefore, the theory upon which defendant has been convicted. Except for his confessions, no evidence connects him with any activity in supplying pistols. If the evidence cannot bear the inference that his confessions might have been voluntary, the question of their nature should not have been submitted to the jury.

That defendant was assaulted and threatened between the times when he was seized by the police and when he was brought into the District Attorney's office cannot be doubted. The evidence is conclusive on that point. He testified that the persons who assaulted and threatened him were police officers and he narrated in detail the methods by which he swears that his confessions were extorted from him. His testimony is denied by the officers whom he named as participants, and if no other evidence on that issue had been produced, a fair question of fact would have been presented. The evidence did not stop there. Shortly after the alleged assaults and threats, defendant was led into the presence of two assistant district attorneys to whom he complained of the treatment to which he claimed to have been subjected by the police. One of these assistant prosecutors did not appear as a witness. The other admitted that, when defendant was brought before him, he had a mark on his right cheek and red spots on his shirt and tie. A keeper in the jail in Queens county to which defendant was transferred November 5, testified that the prisoner's nose was swollen and that there was an abrasion on his right cheek bone. The prison records include a notation to

[248 N. Y. 118] Opinion, per O'BRIEN, J. [May,

the same effect. Similar evidence was given by a keeper in the prison in New York. Defendant's description of his treatment may be exaggerated, yet proof of the assaults is too abundant to be evaded.

To render the confessions inadmissible they must have been made under the influence of fear produced by threats or of a stipulation of immunity from prosecution (Code Crim. Pro. section 395.) Concluding as we must from the evidence that assaults and threats were made against defendant, the impossibility of discovering any moving cause for these confessions, except the assaults and threats, seems to be apparent. We have not here a case where, after his confederate has divulged essential evidence, a criminal confesses in hope of a milder sentence. We are compelled to hold that the evidence is of such a forceful nature as to preclude the possibility of the existence of any moving cause for defendant's confessions except the beatings which he had received and others with which he was threatened. We think that there is no evidence to justify a different inference.

The question whether there is any evidence of the existence of a voluntary confession is one of law. In the first instance this question must of course be decided by the trial judge. If the evidence shows without dispute that the confession was extorted by force or fear or if a verdict that it was freely made would be clearly against the weight of evidence, the judge should reject it. Only where a fair question of fact is presented should the jury be permitted to determine whether the confession is voluntary. If there is no such conflict and if the evidence points clearly to the involuntary nature of the confession the judge should exclude it as without evidence to support it. (*People* v. *Doran*, 246 N. Y. 409, 416, 417, 428.) Here there is no evidence that the confession was made for any reason except fear produced by threats. In the *Doran* case the majority of this court perceived an issue of fact.

Defendant may be guilty of the crime charged in the

indictment.   He may even have supplied the pistols with
which the murders were committed.   Suspicions against
him in that respect are of the gravest character, but not
a shred of proof outside his involuntary confessions can
be found in the record.   Even without supplying pistols,
the possibility exists that, by an arrangement and under-
standing with the prisoners to drive them to a place of
safety after a contemplated escape, he aided, abetted
and encouraged them to make the attempt to escape
which ended in murder.   That question is not here.   The
case was not submitted on any such theory.   That theory
was excluded from the jury's consideration by that part
of the charge which finally instructed to acquit unless
defendant aided and abetted in supplying pistols.   We
cannot know what the verdict would otherwise have been.

The judgment of conviction should be reversed and
a new trial ordered.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN
and KELLOGG, JJ., concur.

Judgment reversed, etc.